UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ALEXANDER,

        Petitioner,

v.   Case No. 04-CV-73953-DT

THOMAS BIRKETT,

        Respondent.
_____/

**OPINION AND ORDER GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
AND
DISMISSING HABEAS CORPUS PETITION**

Petitioner John Alexander has filed an application for the writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges (1) the Michigan Parole Board's alleged policy of eliminating the distinction between parolable and non-parolable life sentences and (2) the trial court's alleged misconception about how much time Petitioner would serve in prison. Respondent urges the court in a motion for summary judgment to deny the habeas petition as untimely or procedurally defaulted.

The court agrees with Respondent that the habeas petition is untimely. Therefore, the court will grant Respondent's motion and dismiss Petitioner's habeas petition.

**I. INTRODUCTION**

Petitioner was convicted in 1981 of second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On March 25, 1981, Detroit Recorder's Judge Michael F. Sapala

sentenced Petitioner to two years in prison for the felony firearm conviction, followed by life imprisonment with the possibility of release on parole for the murder conviction. Before announcing the sentence, Judge Sapala said:

> I'm going to leave the determination of release to the parole board by the sentence that I will fashion. If you show them the kind of progress some years down the line that indicates that you should be released, they will release you. But I will leave it up to their discretion.

(Mar. 25, 1981 Tr. at 5.)[1]  The Michigan Court of Appeals affirmed Petitioner's convictions, and on October 27, 1983, the Michigan Supreme Court denied Petitioner's request for leave to appeal.

On March 2, 1993, Petitioner filed a motion for relief from judgment in which he raised claims about the prosecutor's conduct, his trial attorney's representation, and the trial court's denial of his motion for a mistrial. The trial court denied Petitioner's motion, and the Michigan Court of Appeals denied leave to appeal the trial court's decision.

On March 16, 1998, Petitioner filed a second motion for relief from judgment. He argued that the trial court had sentenced him under a misconception of the law and that his sentence had become nonparolable. He also argued that his right to due process had been violated and that the trial court had lacked accurate information at sentencing. According to Respondent, Judge Chylinski denied Petitioner's motion, and the Michigan Court of Appeals denied leave to appeal on December 28, 1999. Petitioner did not apply for leave to appeal in the Michigan Supreme Court.

---

[1] A prisoner serving a life sentence with the possibility of parole for an offense committed before October 1, 1992, is eligible for parole after ten years. Mich. Comp. Laws § 791.234(6).

On November 26, 2002, Petitioner filed a third motion for relief from judgment in which he alleged that his life sentence had become nonparolable. The trial court held an evidentiary hearing on March 13, 2003, and then granted Petitioner's motion and ordered re-sentencing. The prosecution appealed the trial court's decision, and on July 15, 2003, the Michigan Court of Appeals reversed the trial court's order for re-sentencing. *See People v. Alexander*, No. 248085 (Mich. Ct. App. July 15, 2003). Petitioner appealed the appellate court's decision, but on March 25, 2004, the Michigan Supreme Court denied his application for leave to appeal. *See People v. Alexander*, 678 N.W.2d 441 (Mich. 2004) (table).[2]

Petitioner filed the pending habeas corpus petition through counsel on October 8, 2004. The grounds for relief read:

    I.    The Parole Board's continued incarceration of Petitioner Alexander based on the Board's retroactive application of its new policy converting a parolable life sentence into a non-parolable life sentence increased Petitioner's punishment in violation of the constitutional guarantee against ex post facto laws.

    II.    When the sentencing judge imposed a sentence under the misconception of when a defendant would be released under a life sentence, the sentence violates due process of law.

Respondent maintains in his pending motion that Petitioner has failed to comply with the statute of limitations. Petitioner has not filed a reply to Respondent's motion, nor disputed the facts as alleged in Respondent's motion.

---

[2] Justices Michael F. Cavanagh and Marilyn Kelly voted to grant the application for leave to appeal.

3

## II.  DISCUSSION

### A.  The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted on April 24, 1996.  Among other things, it established a one-year period of limitations for habeas petitions filed by state prisoners.  *See* 28 U.S.C. § 2244(d).  The limitations period runs from the latest of

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner's direct appeal came to an end in 1983 when the Michigan Supreme Court denied his request for leave to appeal.  Petitioner's conviction became final ninety days later when "the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court . . . expired."  *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (citing *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000)); *see* Sup. Ct. R. 13.1 (requiring petitions for certiorari to be filed within ninety days of the judgment of the state court of last resort).  For inmates like Petitioner, whose convictions became

final before the AEDPA was enacted, there was a grace period of one-year, or until April 24, 1997, to file their habeas petitions. *Brown v. O'Dea*, 187 F.3d 572, 577 (6th Cir. 1999), *reversed on other grounds*, 530 U.S. 1257 (2000); *see Carey v. Saffold*, 536 U.S. 214, 217 (2002).

The statute, however, provides for alternative dates from which the period of limitations can run. Petitioner's primary complaint is that he has not been released on parole although he has spent over two decades in prison and is serving a parolable life sentence.

Section 2244(d)(1)(D) provides that the statute of limitations runs from the date on which the factual predicate of a claim could have been discovered through the exercise of reasonable diligence. The United States Court of Appeals for the Sixth Circuit has stated that, "[i]n the context of a challenge to a parole denial, the one-year period of § 2244(d)(1) appears to start when, under § 2244(d)(1)(D), [the habeas petitioner] could have discovered the 'factual predicate of the claim . . . through the exercise of due diligence.'" *Ali v. Tennessee Bd. of Pardon and Paroles*, 431 F.3d 896, 898 (6th Cir. 2005).

### B. Application

The factual predicate for Petitioner's first claim is the Michigan Parole Board's alleged policy of treating "lifers" as if they were serving a life sentence without the possibility of parole. The factual predicate for Petitioner's second claim is the trial court's alleged misunderstanding of the impact of Petitioner's life sentence.

In 1992, the parole statute was amended to require parole interviews every five

years instead of every two years.  The statute did not change the fact that prisoners whose offense was committed before October 1, 1992, were eligible for parole after serving ten years of a parolable life sentence.  See Mich. Comp. Laws § 791.234(6).

In a letter that Petitioner wrote to Judge Sapala on January 1, 1993, Petitioner mentioned the fact that prisoners serving a sentence for second-degree murder were not being released, but were serving "an alarming 15 to 20 years . . . ."  He testified at the state court evidentiary hearing in 2003 that, when he wrote the letter to Judge Sapala in 1993, he "had just left from the Parole Board, and the Parole Board had indicated that [he] was, in effect, doing a natural life [sentence], and not the parolable life [sentence] that [he] was under the impression that [he] was doing."  (March 13, 2002 Tr. at 19.)  Judge Sapala stated at the evidentiary hearing that Petitioner could not have raised his claim until he had served at least fifteen years.  (*Id.* at 65.)

By 1998, Petitioner had served at least fifteen years of his life sentence, and he had appeared before the Parole Board three times.  Furthermore, Petitioner does not deny the fact that, in his second motion for relief from judgment filed on March 16, 1998, he asserted that his sentence had become nonparolable and that the trial court had sentenced him on the basis of a misconception of the law.  Because the essence of Petitioner's habeas claims were raised in his 1998 motion for relief from judgment, it is apparent that Petitioner discovered the factual predicate for his claims by the time he filed his motion in 1998.

The statute of limitations was tolled while Petitioner's 1998 motion for relief from judgment was pending in state court.  See 28 U.S.C. § 2244(d)(2) (stating that "[t]he time during which a properly filed application for State post-conviction or other collateral

6

review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection"); *see also Saffold*, 536 U.S. at 220 (explaining that an application is "pending" until it "has achieved final resolution through the State's post-conviction procedures"). The trial court denied Petitioner's motion on June 30, 1998, and the Michigan Court of Appeals denied leave to appeal on December 28, 1999. Petitioner did not appeal the state appellate court's decision to the Michigan Supreme Court, and the deadline for doing so expired fifty-six days later on February 22, 2000. *See* Mich. Ct. Rule 7.302(C)(2). The statute of limitations then began to run, because the time for seeking leave to appeal in the Michigan Supreme Court had expired. *Erwin v. Elo*, 130 F. Supp. 2d 887, 889 (E.D. Mich. 2001) (Tarnow, J.). The limitations period expired one year later on February 22, 2001. Petitioner did not file his habeas petition until October 8, 2004. Therefore, his claims are untimely, absent equitable tolling.

### C. Equitable Tolling

The Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations," *Pace v. DiGuglielmo*, __ U.S. __, __, 125 S. Ct. 1807, 1814 n. 8 (2005), but the United States Court of Appeals for the Sixth Circuit has stated that the statute of limitations is not jurisdictional, *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003), and that equitable tolling applies to the one-year limitation period for habeas petitions, *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001). A petitioner who seeks equitable tolling generally "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 125 S.

7

Ct. at 1814.

In this Circuit, courts must consider and balance the factors set out in *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988), "unless there is congressional authority to the contrary." *Dunlap*, 250 F.3d at 1009. The *Andrews* factors are:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) [the] petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim. [*Dunlap*, 250 F.3d] at 1008. These factors are not necessarily comprehensive and they are not all relevant in all cases. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis. *Id.*

*Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).

Lack of prejudice to the respondent is not an independent basis for invoking the doctrine of equitable tolling, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984), and Petitioner has not alleged that he lacked notice or constructive knowledge of the filing requirement. Nor has he claimed that some extraordinary circumstance prevented him from filing a timely habeas petition or that his ignorance of the filing requirement was reasonable. Therefore, equitable tolling is not appropriate here. Petitioner's habeas petition is time-barred.

### III.  CONCLUSION

IT IS ORDERED that Respondent's motion for summary judgment and dismissal [Dkt. #6] is GRANTED.

IT IS ALSO ORDERED that Petitioner's habeas petition [Dkt. #1] is DISMISSED as time-barred.[3]

          S/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated:  March 10, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 10, 2006, by electronic and/or ordinary mail.

          S/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522

---

[3] In light of the court's conclusion that the habeas petition is untimely, the court finds it unnecessary to address Respondent's procedural default argument.

S:\Cleland\JUDGE'S DESK\Odd Orders\04-73953.ALEXANDER.GrantingSJandDismissal.wpd